IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **ALISON SLADE** | § |
| Movant, | § |
| vs. | § |
| **UNITED STATES SECURITIES and EXCHANGE COMMISSION,** | § Civil Action No.: _____ |
| Respondent. | § |

**MEMORANDUM OF LAW IN SUPPORT OF MOVANT'S
MOTION TO QUASH THE UNITED STATES SECURITIES AND EXCHANGE
COMMISSION'S SUBPOENA**

FORD O'BRIEN LANDY LLP

Matthew A. Ford, Esq.
Texas Bar No. 24119390
3700 Ranch Road 620 South
Suite B
Austin, TX 78738
Tel: (212) 858-0040
mford@fordobrien.com

*Attorney for Movant*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS ................................................................................................................... 2

    I.    Legal Standard ................................................................................................................ 4

   II.    The Court Should Grant Movant's Motion To Quash the Subpoenas Because Its Issuance Is Defective Under the SEC's Shutdown Operating Plan Which Does Not Authorize Investigative Work By SEC Staff Attorneys During a Government Shutdown Absent Commission Authorization ............................................................................................ 5

  III.    The Court Should Grant Movant's Motion To Quash the Subpoena Because Its Issuance Is Legally Defective as the SEC staff attorney Is Acting Without Authority Under The SEC's Regulations Conferring Investigative Powers to SEC staff ...................................... 7

  IV.    The Court Should Grant Movant's Motion To Quash the Subpoena Because Its Issuance Is Legally Defective As It Violates the Right to Financial Privacy Act As It Is Neither Legitimate nor Relevant ................................................................................................ 8

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*Commodity Futures Trading Comm'n v. TMTE, Inc.*,
2025 WL 1006205 (N.D. Tex. Jan. 8, 2025) ...................................................................... 4

*Feiner v. SEC*,
914 F. Supp. 2d 474 (S.D.N.Y. 2012) ................................................................... 8, 9, 10

*Geoff Winkler Receiver for Profit Connect Wealth Services, Inc., v. Jeffrey Nicholas*,
2025 WL 3125924 (N.D. Tex. July 3, 2025) .................................................................. 4, 5

*In re McVane*,
44 F.3d 1127 (2d Cir. 1995) ............................................................................................ 11

*Lerman v. SEC*,
928 F. Supp. 2d 798 (S.D.N.Y. 2013) .............................................................................. 11

*Pennington v. Donovan*,
574 F. Supp. 708 (S.D. Tex. 1983) .................................................................................... 9

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
878 F.2d 875 (5th Cir. 1989) ........................................................................................ 8, 9

*SEC v. Jerry T. O'Brien, Inc.*,
467 U.S. 735 (1984) .......................................................................................................... 8

*Tullier v. U.S. Dep't of Def.*,
2005 WL 1353819 (W.D. Tex. June 1, 2005) ................................................................... 9

*Williams v. City of Dallas*,
178 F.R.D. 103 (N.D. Tex. 1998) ..................................................................................... 4

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) ............................................................................................ 4

Statutes

12 U.S.C. §§ 3401-22 ............................................................................................................ 3
12 U.S.C. § 3410(a) ............................................................................................................... 9
12 U.S.C. § 3410(c) ............................................................................................................... 9
12 U.S.C. § 3410(e) ............................................................................................................... 8

Rules

Fed. R. Civ. P. 45 .................................................................................................................. 4

Regulations

17 C.F.R. § 203 ..................................................................................................................... 1
17 C.F.R. § 201.232(a) .......................................................................................................... 7
17 C.F.R. § 202.5 .............................................................................................................. 1, 7
17 C.F.R. § 202.5(a) .............................................................................................................. 7

17 C.F.R. § 203.8 .................................................................................................................................7

Movant Alison Slade ("Mrs. Slade" or "Movant") respectfully submits the following memorandum of law in support of Movant's Motion to Quash Plaintiff Securities and Exchange Commission's (the "SEC") subpoena requesting Movant's financial records (the "Subpoena").[1]

**PRELIMINARY STATEMENT**

This Court should quash the SEC's subpoena requesting Mrs. Slade's financial records. First, the SEC's issuance of the subpoena is defective because the SEC staff's authority to serve process was restricted pursuant to the SEC's Emergency Operating Plan, which went into effect on October 1, 2025, pursuant to the ongoing government shutdown. The Emergency Operating Plan restricts investigative action to that which is necessary to protect public and private property and has been approved by the Commission. But this subpoena does not serve the purpose of protecting property and this investigative action was not approved by the Commission.

Furthermore, this subpoena is legally defective because the SEC lacked authority under its regulations conferring investigative powers. An SEC staff attorney may not serve process absent Commission authorization. Compare 17 C.F.R. § 202.5 *with* 17 C.F.R. 203. Although prior to the government shutdown certain SEC staff had been authorized to issue subpoenas pursuant to the Formal Order of Investigation (FOI), that authority was revoked during the pendency of the shutdown. That is, SEC staff, under SEC regulations and Emergency Operating Plan, was not authorized by the Commission to issue this subpoena absent authorization from the Commission.

Finally, this subpoena must be quashed pursuant to the Right to Financial Privacy Act because it lacks legitimacy and relevance to the SEC's investigation. It seeks information banking

---

[1] The "Subpoena" refers to the subpoena and the accompanying documents the SEC sent to Mrs. Slade.

1

and financial records prior to the relevant period of the SEC investigation or that otherwise serve no legitimate law enforcement purpose. This subpoena merely serves to harass the spouse of a target in this investigation, such as requesting the bank account records of Mrs. Slade's deceased mother and her estate. Consequently, Mrs. Slade asks this Court to quash the SEC's legally defective, illegitimate, and irrelevant subpoena.

## RELEVANT FACTS

On January 31, 2024, the SEC entered a formal order of investigation into ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "January 2024 Order"). *See* Ford Affirm. as Ex.1.[2]  The January 2024 FOI purported to investigate ▮▮▮▮▮▮▮▮▮▮▮ and the other entities for possible securities law violations. *Id.* On September 9, 2024, the FOI was amended to reflect a name change of an SEC staff attorney involved in the investigation at the time. *Id.* On May 18, 2025, there was another amendment to the January 2024 FOI, this time removing several SEC staff attorneys' authority to conduct investigative activities pursuant to the FOI. *Id.*

A few months later, at midnight on October 1, 2025, the United States Congress failed to pass new funding bills, and a government shutdown ensued. *See* Megan Lebowitz and Joe Murphy, *Government shutdown key dates: What happened and what's happening, day by day*, MSNBC, Nov. 11, 2025, https://www.nbcnews.com/data-graphics/government-shutdown-key-dates-social-security-wic-smithsonian-museums-rcna235198. To date, the government shutdown is still ongoing, and is presently on its forty first day, and counting. *Id.* Per the SEC's own website, the SEC was one of the government agencies affected by the shutdown. U.S. Securities and Exchange Commission, *SEC Operational Status*, https://www.sec.gov/ (last visited Nov. 11, 2025).

---

[2] The January 2024 Order refers to the Order and the accompanying documents.

2

According to the SEC, it is "currently operating in accordance with the agency's plan for operating during a shutdown" with "very limited . . . staff" and is "available to respond to emergency situations with a focus on market integrity and investor protection components." *Id.* Per its Shutdown Operating Plan, the SEC staff respond to "emergency situations involving the safety of human life or the protection of property, including law enforcement" but the SEC staff may not conduct "investigative work, including commencing investigations and conducting investigative testimony" unless approved by the Commission. U.S. Securities and Exchange Commission, *Operations Plan Under a Lapse in Appropriations and Government Shutdown*, Aug. 7, 2025, at 3, 16, https://www.sec.gov/files/sec-plan-operations-during-lapse-appropriations.pdf. By its language, the SEC's October 1, 2025, Shutdown Operating Plan bars investigative work by SEC staff attorneys absent authorization from the Commission.

Yet, on November 6, 2025, with the shutdown still ongoing and in violation of the SEC's own Shutdown Operating Plan, the SEC staff from the Fort Worth Regional Office (FWRO) purported to issue a subpoena requesting the production of certain financial records and transactions from Mrs. Slade involving the SEC's investigation into ▮▮▮▮▮▮▮▮ and the other entities. Ford Aff. as Ex. 2. The subpoena claims the financial information is being sought "in accordance with the Right to Financial Privacy Act of 1978, 12 U.S.C. 3401-22." SEC Subpoena to Alison Slade at 1. The Subpoena states it is made "pursuant to the formal order of investigation, and the information sought is to assist the Commission in determining the issues set forth in the formal order of investigation." *Id.* The Subpoena was also addressed to financial institutions with which the SEC claims Mrs. Slade has accounts. *Id.* at 8, 34. Specifically, the SEC is seeking documents for seven accounts with JP Morgan Chase and four accounts with Wells

3

Fargo, all of which it purports belongs to Mrs. Slade. *Id.* at 15, 41. In light of the Subpoena, Mrs. Slade files this instant motion to quash.

I. **Legal Standard**

Rule 45(d) of the Federal Rules Civil Procedure governs the use of subpoenas. *See* Fed. R. Civ. P. 45; *Commodity Futures Trading Comm'n v. TMTE, Inc.*, 2025 WL 1006205, at *3 (N.D. Tex. Jan. 8, 2025). The rule provides that:

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*Id.* (citing Fed. R. Civ. P. 45(d)(1)). A court is required to quash or modify a subpoena that "subjects a person to undue burden." *Geoff Winkler Receiver for Profit Connect Wealth Services, Inc., v. Jeffrey Nicholas*, 2025 WL 3125924, at *1 (N.D. Tex. July 3, 2025). The party moving to quash the subpoena has the burden to demonstrate that "compliance with the subpoena would be unreasonable and oppressive." *Id.* (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). Reasonableness is determined on a case-by-case basis. *Commodity Futures Trading Comm'n*, 2025 WL 1006205 at *3. In making the determination, "a court considers the relevance, importance, and need for the testimony, as well as the burden imposed" on the respondent party. *Geoff Winkler*, 2025 WL 3125924 at *1. The moving party must support its motion with an "affidavit or other evidence revealing the nature of the burden." *Id.*

4

II. **The Court Should Grant Movant's Motion To Quash the Subpoena Because Its Issuance Is Defective Under the SEC's Shutdown Operating Plan Which Does Not Authorize Investigative Work By SEC Staff Attorneys During a Government Shutdown Absent Commission Authorization.**

The SEC's Shutdown Operating Plan does not allow for investigative work during a government shutdown absent Commission authorization. In fact, the operating plan expressly sets forth that certain investigative work must be discontinued during a shutdown or lapse in appropriations. Thus, the SEC Staff attorney's issuance of the Subpoena here directly contravenes the SEC's operating plan and mandates quashing the Subpoena. The SEC's Shutdown Operating Plan has three key sections which provides guidance as to permitted and prohibited activities for the SEC staff when there is a lapse in appropriations or a shutdown. U.S. Securities and Exchange Commission, *Operations Plan Under a Lapse in Appropriations and Government Shutdown*, Aug. 7, 2025, https://www.sec.gov/files/sec-plan-operations-during-lapse-appropriations.pdf.

*First*, the SEC's Shutdown Operating Plan's summary discussing activities during a lapse in appropriations provides: "[i]n the event the SEC shuts down, the Commission will have only an extremely limited number of staff members available to respond to emergency situations involving the safety of human life or the protection of property, including law enforcement. Certain Commission systems will be operating under modified conditions." *Id.* at 3.

*Second*, the SEC's Shutdown Operating Plan's summary of major functions to be continued during a lapse in appropriations provides that in the event of a shutdown, only certain functions may be performed including those relating to "*emergencies* involving the safety of human life or the protection of property." *Id.* at 12. (emphasis added). This section of the plan also provides that "[o]ther SEC functions generally will be discontinued." *Id.* Specifically, as to enforcement and litigation, the Shutdown Operating Plan states that a limited number of staff are available but only to: (1) "[h]andle emergency enforcement matters, including temporary restraining orders

5

and/or investigative steps necessary to protect public and private property," (2) "[m]onitor the Commission's Tips, Complaints, and Referrals system . . . to identify matters that are emergencies and take follow-up steps relating to such emergencies," (3) "[h]andle ongoing litigation that cannot be deferred because there is a threat to property," and (4) "[p]erform emergency examinations and inspections to protect public and private property." *Id.* at 14.

*Third*, the SEC's Shutdown Operating Plan's summary of major functions to be discontinued during a lapse in appropriations specifically prohibits several actions as it relates to enforcement actions. These include that the "SEC will not engage in ongoing litigation, except matters that cannot be deferred as described above; *investigative work, including commencing investigations and conducting investigative testimony*, except as necessary for the protection of property; pursuing the collection of any delinquent debts or work to distribute funds to harmed investors; or non-emergency examinations and inspections and related follow-up." *Id.* at 16. (emphasis added).

Thus, the SEC's emergency operating plan does not authorize investigative work by SEC staff *except as necessary for the protection of property and authorized by the Commission*. Plainly, the Subpoena was issued not to protect property or respond to an emergency enforcement matter, but rather as a routine step in the SEC's investigation of ▮▮▮▮▮▮▮▮▮▮ and the other entities. Because the SEC has made clear in its emergency operating plan that such investigative activity is unauthorized during the shutdown, the Court should quash the Subpoena.

Moreover, even if the SEC claims that the Subpoena is for the "protection of property," the Subpoena does not serve that purpose. *See* U.S. Securities and Exchange Commission, *Operations Plan Under a Lapse in Appropriations and Government Shutdown*, Aug. 7, 2025, at 16, https://www.sec.gov/files/sec-plan-operations-during-lapse-appropriations.pdf. The Subpoena

does not act as a restraining order that would prohibit Mrs. Slade from using, dissipating, or transferring any of the funds in the accounts from which the SEC is seeking records. Therefore, the issuance of the Subpoena was invalid and in contravention of the SEC's own Shutdown Operating Plan barring investigative work during a shutdown.

    III.    **The Court Should Grant Movant's Motion To Quash the Subpoena Because Its Issuance Is Legally Defective as the SEC staff attorney Is Acting Without Authority Under The SEC's Regulations Conferring Investigative Powers to SEC staff.**

Where, as here, when the SEC issues a subpoena in contravention of specifically enumerated regulations which authorize its investigatory powers, such a subpoena should be quashed. The SEC's authority derives, in part, from certain regulations including those around its enforcement activities. *See* 17 C.F.R. § 202.5. One such regulation, in relevant part, states that "[w]here . . . it appears that there may be a violation of the acts administered by the Commission or the rules or regulations," SEC staff may conduct "informal" a "preliminary" investigative activities. *See* 17 C.F.R. § 202.5(a). The regulation further provides that in such an investigation "no process is issued or testimony compelled." *Id.* However, the SEC "may, in its discretion," commence a formal investigation, if authorized by the Commission. *Id.* When the SEC chooses to do so, the Commission may "authorize the use of process as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities law or the rules." *Id.* Upon issuing a subpoena as part of a formal investigation, "[s]ervice of [such] subpoenas" must be made in accordance with the Commission's Rules of Practice under Section 201.232(c). *See* 17 C.F.R. § 203.8. And when the SEC is seeking a subpoena "requiring the production of documentary or other tangible evidence" such a subpoena must be authorized by the Commission. 17 C.F.R. § 201.232(a). In other words, the SEC staff must not use process without Commission authorization.

7

Mrs. Slade does not contest that at the time the FOI was issued, on January 31, 2024, the Commission had authorized certain SEC staff for conduct use process. Mrs. Slade also does not contest that when the Commission modified its original January 2024 Order, on September 9, 2024, and May 18, 2025, the Commission had authorized certain staff to use process *at that time*. Here, the SEC staff issued a subpoena on November 6, 2025, during the pending government shutdown which began on October 1, 2025. Any authority the Commission had authorized for SEC staff investigative activities where temporarily revoked during the government shutdown on midnight of October 1, 2025. Without Commission issuance of a FOI authorizing use of process in this matter, the SEC staff lacked authority to use process. Therefore, the Subpoena should be quashed.

IV. **The Court Should Grant Movant's Motion To Quash the Subpoena Because Its Issuance Is Legally Defective As It Violates the Right to Financial Privacy Act As It Is Neither Legitimate nor Relevant.**

The Right to Financial Privacy Act ("RFPA") places limits on government agencies' powers to issue subpoenas for customers' bank records. *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 876 (5th Cir. 1989). The RFPA was enacted enable customers to "shield their financial records from government scrutiny." *Id.* The RFPA is the sole means by "which a bank customer could challenge the disclosure of documents subpoenaed from that customer's bank." *Feiner v. SEC*, 914 F. Supp. 2d 474, 477 (S.D.N.Y. 2012) (citing 12 U.S.C. § 3410(e)); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745–46 (1984) (discussing procedural mechanisms in the RFPA by which certain bank customers may challenge subpoenas). An agency, like the SEC, can obtain a customer's records from the bank only if: "(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; (2) the agency serves the customer with a copy of the subpoena and with the statutory notice of his right

8

to challenge the subpoena; and (3) the customer does not challenge the subpoena within ten days of service or 14 days of mailing the subpoena." *Sandsend Fin. Consultants, Ltd.*, 878 F.2d at 877 (citing 12 U.S.C. § 3405). A customer challenging a subpoena must file a "motion to quash" that includes an "affidavit or [a] sworn statement" in support. 12 U.S.C. § 3410(a). A motion to quash must be denied "[i]f the court finds that [] there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry." *Feiner*, 914 F. Supp. 2d at 477 (quoting 12 U.S.C. § 3410(c)); *see also Sandsend Fin. Consultants, Ltd.*, 878 F.2d at 877.

A motion to quash must be granted, however, "[i]f the court finds that the applicant is the customer to whom the records sought by the Government authority pertain," "that there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate" and there is not "a reasonable belief that the records sought are relevant to that inquiry, or that there has not been substantial compliance" with the statute. 12 U.S.C. § 3410(c). In short, a ruling is contingent on a two-part analysis: (1) "whether there is a demonstrable basis to believe that the SEC is pursuing a legitimate inquiry" and (2) "whether the SEC has a reasonable belief that the requested documents are relevant to that inquiry." *Feiner*, 914 F. Supp. 2d at 477; *see also Tullier v. U.S. Dep't of Def.*, 2005 WL 1353819, at *1 (W.D. Tex. June 1, 2005), *report and recommendation adopted*, 2005 WL 1593393 (W.D. Tex. June 24, 2005).

An inquiry is illegitimate, thereby failing the first part of the analysis, if it is done for "an illegitimate purpose" such as "harassment [or] intimidation." *Feiner*, 914 F. Supp. 2d at 477; *see also Pennington v. Donovan*, 574 F. Supp. 708, 709 (S.D. Tex. 1983) ("An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political harassment or intimidation or otherwise in bad faith."). As to

9

the reasonableness prong, a moving party does not need to show "a detailed evidentiary showing" but must show a "factual basis" as to why the records are irrelevant. *Feiner*, 914 F. Supp. 2d at 477.

When the SEC is seeking a subpoena for accounts that are either closed, not owned or operated by the party from which it is requesting records, or their existence pre-dates when the entity the SEC is investigating was formed, such an inquiry is illegitimate and not relevant. The Subpoena is seeking information about four Wells Fargo bank accounts the SEC claims are owned by Mrs. Slade. Ex. 2 at 41. This inquiry is not legitimate and the evidence it seeks is not relevant since, the accounts and the records sought pre-date the formation of the entity under investigation; a year prior to the "[r]elevant [p]eriod" beginning January 1, 2021, by the SEC's own admission in the Subpoena. *Id.* at 13. Moreover, ███████████, the entity central to the SEC's investigation was not formed until 2022.³ *See* Ex. 1. The SEC's targets these accounts for no legitimate purpose.

The Subpoena also seeks information about seven J.P. Morgan Chase accounts the SEC purports belongs to Mrs. Slade. Ex. 2 at 15. Here, it appears the purpose and inquiry are also disconnected from any legitimate purpose. For example, the SEC is seeking information and records from an account ending in 3030, but that account has zero affiliation or connection to the SEC's investigation of ███████████ and instead, it is an account that was owned by Mrs. Slade's deceased mother for whom Mrs. Slade is acting as executrix. Alison Slade Aff. ¶ 6, Ex. 3. Moreover, the records sought are irrelevant to any investigation of ███████████ and the other entities, because the subpoena seeks records of accounts prior to the relevant time period. *Id.* ¶¶ 5, 7-10. The financial documents sought serve no legitimate law enforcement purpose.

---

³ The January 2024 Order notes that it is only seeking information "from at least 2022."

In instances, as here, when the SEC subpoenas the financial records of the spouse of a target of their investigation, who have no connection to the SEC's investigation, courts have quashed these subpoenas. Here, Mrs. Slade, who has no role with ▮▮▮▮▮▮▮▮ or the other entities and appears to have received these subpoena's solely because she is married to Duane Slade. Such runs counter to any legitimate purpose or inquiry. *See Lerman v. U.S. S.E.C.*, 928 F. Supp. 2d 798, 805 (S.D.N.Y. 2013) (quashing a subpoena brought under the Section 3410 of the Right to Financial Privacy Act against a target's spouse because the "SEC ha[d] not thus far asserted that [the target's wife]" was also "a target of the SEC investigation," had failed to explain "how her involvement [in the business] [was] relevant to the SEC's investigation" and had failed to explain "how her personal bank records are relevant to that investigation."); *In re McVane*, 44 F.3d 1127, 1136–1138 (2d Cir. 1995) (granting motion to quash an FDIC subpoena, issued to a Director's spouse under the RFPA because "administrative subpoenas issued pursuant to an agency investigation into corporate wrongdoing, which seek personal records of persons who are not themselves targets of the investigation and whose connection to the investigation consists only of their family ties to corporate participants, must face more exacting scrutiny than similar subpoenas seeking records solely from corporate participants."). Therefore, the Court should quash the Subpoena as both illegitimate and irrelevant to the SEC's investigation.

## CONCLUSION

For the foregoing reasons, the Court should grant Movant's Motion to Quash the Subpoena.

| | |
|---|---|
| Dated: November 11, 2025 | Respectfully submitted,<br><br>/s/Matthew A. Ford<br><br>Matthew A. Ford, Esq.<br>Texas Bar No. 24119390<br>3700 RR 620 S<br>Suite B<br>Austin, TX 78738<br>Tel: (212) 858-0040<br>mford@fordobrien.com<br><br>*Attorney for Movant* |

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 11, 2025, I electronically filed the foregoing via the Court's CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants. I further certify that I served a true and correct copy of the foregoing document and the notice of electronic filing via electronic mail on all non-CM/ECF parties and/or their counsel as detailed below:

*Via email to purcellale@sec.gov.*

Alexis Purcell
Counsel for Plaintiff, the Securities and Exchange Commission

                   Matthew A. Ford
                   Matthew A. Ford, Esq.